1817.

PERKINS *against* GAY.

*Sunbury.*

IN ERROR.

*Tuesday,*
*June 17.*

ERROR to the Common Pleas of *Luzerne* county, in an ejectment brought by *Fisher Gay* against *David Perkins,* for a part of a lot lying in the 2d division of *Kingston* township, *Luzerne* county.

The plaintiff below claimed title to the premises in dispute, under a certificate granted in pursuance of the act of 4th *April,* 1799, on the 16th *January,* 1804, to *Philip Jackson* and *Elijah Shoemaker,* for lot No. 3, in the 2d division of *Kingston* township, containing 42 acres and 96 perches, and a draft of survey, dated 1 *December,* 1802; an assignment by *Jackson* and *Shoemaker,* to the plaintiff, on the 11th *May,* 1807, and a patent to the plaintiff on the 23d *November,* 1812. The defendant claimed under a certificate to himself, dated the 16th *January,* 1804, for lots No. 1 and 2; a draft of survey, dated the 1st *December,* 1802, and a patent dated 20th *October,* 1812. The tract in dispute lay between lots No. 2 and 3. On the face of the papers there was no interference or conflicting claims. Both parties were *Connecticut* claimants, and their certificates and patents called for the same course and distance.

On the trial in the Court below, the President of the Court charged the jury as follows:

" I hold it as a general rule, that in disputes as to boundary, the certificate, patents, and survey, made by the authority of the commissioners, are to govern the claims of the respective parties. The certainty and security of titles, and the safety of the community require, that this should be the governing principle; and the lines of the commissioners will controul the lines run under the authority of the *Susquehannah* company. For if you change the lines of the commissioners, you introduce confusion and uncertainty in the whole titles of the county. The land office will no longer contain the records of your titles, they will depend on the uncertainty of parol testimony, and you will have all the

The lines as established on the ground by the surveyor or of the commissioners under the act of 4th April, 1799, within the 17 townships, if not subsequently altered by the acts of the parties, ought to prevail. Parties to an agreement must be acquainted with the extent of their rights, and the nature of the information they can call for respecting them, else they will not be bound. But where the parties treat upon the basis, that the fact which is the subject of the agreement is doubtful, and the consequent risk each is to encounter, is taken into consideration in the stipulations assented to, the contract will be valid notwithstanding any mistake of one of the parties, provided there be no concealment or unfair dealing by the opposite party that would affect any other contract.

3 SR 327
22 SC 62

3 SR 327
f 24 SC ² 39
f 24 SC ²218

evils incident to a departure from legal and known land marks.

" This being the rule, you will enquire, 1. Where was the line run by the commissioners?

" If the line was first actually run by the commissioners where the fence stood, but before they made their certificate, they thought proper to change it; I hold it as a clear rule of law, that the commissioners had it in their power, under the authority of the several acts of assembly, to alter and change the line; and if the commissioners made that alteration and change, it will govern the parties, and controul the lines first run; and of this you will judge.

2. " If you should be of opinion, that the place where *Bennet* and *Lewis* have fixed the line, is the place where the commissioners placed it, you will enquire whether there are any circumstances in the case, which will prevent the plaintiff from recovering?

" The parties unquestionably may alter and change the line of the commissioners, and make what is called a consentable line. And if you are satisfied, that *Jackson*, under whom the plaintiff claims, and *Perkins*, did fix the place where the fence stood, as the extent of their respective claims, the defendant being in possession when the plaintiff purchased, it will controul the line of the commissioners, and the plaintiff cannot recover. But it is my opinion on this point, that to controul the survey and patent, the testimony ought to be clear, and if the parties at the time they made the agreement respecting a consentable line, (if such agreement was made,) laboured under a mistake as to their respective rights, the plaintiff ought not to be barred; especially in this case, where no innocent purchaser can be affected, and of this you will judge."

To this charge the defendant excepted.

*Huston* and *Hall*, for the plaintiff in error.

*Dennison* and *Watts*, contra.

TILGHMAN C. J. gave no opinion not having been present at the argument.

The opinion of the Court was delivered by

Gibson J. By the act of the 4th *April*, 1799, it is made the duty of the commissioners to ascertain all the rights or lots within the seventeen townships, that were occupied or acquired by *Connecticut* claimants, and to make out certifi‑ cates therefor, " with a draught of the *survey* thereto an‑ " nexed." It is then provided, that on application of the original settlers or their legal representatives, and security being given for the purchase money, patents "*for the lands* " *so certified*," shall issue from the proper office. It is very clear, that the patent following the courses and distances of the survey returned by the commissioners, vests no *legal* title in lands not included in that survey. But, it having been the duty of the commissioners in making surveys, to follow the boundaries established under the grants of the *Susquehannah* company, as near as the same could be ascer‑ tained, it is supposed where a departure occurred through mistake, the party will have at least an equity in the part of the original tract or lot, excluded from his survey. At first view, this does not appear devoid of reason ; particularly, as it has been adjudged in *Carkhuff* v. *Anderson*, 3 *Binn.* 4, that the patent does not vest a new right but confirms an old one, the *Connecticut* title being the *substratum* on which that under *Pennsylvania* is founded. If the party thus losing part of his lot were in no default ; as in case of accident or mistake in not recognising alterations of the original lines by the agreement of the parties ; especially if the omission arose from trick on the part of him who would be benefited by it, perhaps the latter would be considered as a trustee as to the land thus unjustly acquired. On the other hand, it was clearly intended, that questions of *boundary* as well as questions of title between the *Connecticut* claimants, should be submitted to the decision of the commissioners. By the ninth section of the act above cited, the commissioners are empowered " to appoint a surveyor or surveyors, and to em‑ " ploy chain carriers and *markers*, for the purpose of such " surveys as they shall judge necessary, and the said sur‑ " veyors, chain carriers, and markers, shall be sworn, &c. " and all surveys made by direction of the said commission‑ " ers, shall be by them returned to the office of the surveyor " general ;" and by the eleventh section it is enacted, " that " in case of dispute between the *Connecticut* claimants, they

Vol. III.—T t

"may elect to have the same decided by the said commis-
"sioners, or appeal before such decision to the Court of
"Common Pleas of the proper county," and a certificate of
the clerk of the commissioners or the prothonotary of the
Court, certifying in whose favour the decision was had, is
made evidence for the purpose of obtaining the patent.
There can be no doubt, but the provisions of this last section
extend, as well to disputes about boundary, as to those be-
tween different claimants to a whole lot. Now the duty of
the commissioners under the act, was substantially a pro-
ceeding *in rem*, of which all parties interested were to take
notice. All the lots within the seventeen townships, settled
within the true intent and meaning of the act, by *Connecticut*
claimants, antecedent to the decree of *Trenton*, were sub-
jected to their jurisdiction; and it was their business to
make inquisition not only of the true ownership of each,
agreeably to the rules and regulations of the *Susquehannah*
company, but also of their limits and boundaries, by "ascer-
"taining the lots." Hence the necessity of employing chain
carriers, surveyors, and markers. It was, therefore, the
business of each claimant for whom a survey was to be made,
to give the surveyor all the information that could be ob-
tained as to the ancient boundary, and having done so, if he
were dissatisfied with the survey made by the surveyor, he
should have complained to the commissioners or have taken an
appeal to the Court of Common Pleas. Here the claimant has
neglected to do so, and the survey must be considered as
having been acquiesced in. It is too late to complain of a
departure from the ancient boundary, after the party has
acknowledged and sanctioned the lines established by the
commissioners, by taking out a patent conformable to those
lines. The parties had an opportunity of being heard, and,
therefore, stand in the same situation as if they had been
actually heard; the question being virtually decided by the
survey having been unappealed from, and acted on by the com-
missioners, whose authority in this particular was judicial.
As to every thing they did decide, their certificate is final
and conclusive, and not now to be controverted: it is in the
nature of a judgment of a Court of competent jurisdiction
directly on the point, and conclusive on the same point,
when brought incidentally into view in another proceeding.
We are, therefore, of opinion, the Court of Common Pleas

did not err in directing the jury, that the lines, established on the ground, by the surveyor of the commissioners, if not subsequently altered by the acts of the parties, ought to prevail.

1817.

PERKINS
v.
GAY.

But the defendant gave evidence of the establishment of a consentable line, as a permanent boundary, which he contended was fixed by him and *Jackson*, under whom the plaintiff claims. This boundary leaves the land to the defendant. Whether the parties ever agreed to it, and if they did, under what circumstances, were matters proper for the decision of the jury; what we have to do with is the direction of the Court in matters of law. It was laid down in general terms, that if, at the time of an agreement to establish a consentable line, as we technically call it, the parties labour under a mistake as to their respective rights, they will not be bound. To this doctrine I do not assent; no boundary of the sort could in any case prevail, if it were law, for the consideration of the agreement, is, in ninety-nine cases out of a hundred, the settlement of a dispute arising from ignorance and misapprehension of right on both sides. If, to prevent irritation until the true line be ascertained, a temporary boundary, predicated on the avowed ignorance of the parties, be established, to a full understanding that it is not to be permanent; there is no doubt it will not have effect beyond the terms of the agreement. So if the parties, from misapprehension, adjust their fences, and exercise acts of ownership, in conformity with a line which turns out not to be the true boundary; or permission be ignorantly given to place a fence on the land of the party, this will not amount to an agreement, or be binding as the assent of the parties; and I agree it is a principle of equity, that the parties to an agreement must be acquainted with the extent of their rights and the nature of the information they can call for respecting them, else they will not be bound. The reason is, that they proceed under an idea that the fact which is the inducement to the agreement, is in a particular way, and give their assent, not absolutely, but on conditions that are falsified by the event. *Turner* v. *Turner*, 2 *Ch. Rep.* 81. *Bingham* v. *Bingham*, 1 *Vez.* 126. *Gee* v. *Spenser*, 1 *Vern.* 32. *Pusey* v. *Desbouverie*, 3 *P. Wms.* 316. *Lansdown* v. *Lansdown*, *Mosely*, 364. *Cocking* v. *Pratt*, 400. But where the parties treat upon the basis that the fact which is the subject of the agreement

1817.

PERKINS
*v.*
GAY.

*is doubtful*, and the consequent risk each is to encounter is taken into consideration in the stipulations assented to, the contract will be valid notwithstanding any mistake of one of the parties, provided there be no concealment or unfair dealing by the opposite party, *that would affect any other contract.* *Can* v. *Can*, 1 *P. Wms.* 726. *Pullen* v. *Ready*, 1 *Atk.* 587. *Jones* v. *Randall*, *Cowp.* 37. Every wager, as well as every policy of insurance, and every compromise of a doubtful right, depends on this principle. The establishment of this kind of boundary is always a matter of compromise, in which each party supposes he gives up for the sake of peace something to which in strict justice he is entitled. There is an express mutual abandonment of their former rights, upon an agreement, that whether they be good or whether they be bad, neither is to recur to them on any pretence whatever, or claim any thing that he does not derive from the terms of the agreement. Each takes his chance of obtaining an equivalent for every thing he relinquishes, and if the event turn out contrary to his expectations, so much the worse for him. If there be no intention of fraud, no unfair dealing, and neither party has more knowledge of the fact misconceived, than the other had, the contract will bind. I regret being obliged to reverse a judgment on account of an inadvertent expression which may have had no effect on the verdict; but on a bill of exceptions we have no discretion. The judgment must be reversed, and a *venire facias de novo* awarded.

> Judgment reversed, and a *venire facias de novo* awarded.

END OF JUNE TERM, 1817.

# CASES

## IN THE

# SUPREME COURT

### OF

## PENNSYLVANIA.

·WESTERN DISTRICT, SEPTEMBER TERM, 1817.