# HENRY MULHOLLAND

*v.*

# MOSES BARTLETT.

1. CONSIDERATION —*forbearance to sue.* To make forbearance to sue a good consideration for a promise to pay, there must be a well-founded claim in law or in equity forborne, or there must be a compromise of a doubtful right.

2. When a person in a strange city, on being threatened with suit upon the acceptance of a draft by a firm as a partner therein, when in fact he was not a partner, and had no connection with such firm, and so informed

the holder of the draft, to avoid suit and to gain time gave the holder his written promise to pay the draft, it was held that there was no valid consideration for the promise.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was an action of assumpsit, brought by Henry Mulholland against Moses Bartlett, upon the written promise set out in the opinion. A trial was had, resulting in a verdict and judgment for the defendant.

Messrs. CRAWFORD & MARSHALL, for the appellant.

Mr. WILLIAM LATHROP, and Mr. C. M. BRAZEE, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, in the Winnebago circuit court, resulting in a verdict and judgment for the defendant.

The question presented is, the liability of the defendant to the plaintiff, growing out of the following transaction, and which is the foundation of plaintiff's claim.

"MONTREAL, 10*th October*, 1857.
" £147.13.9, cy.

" Four months after date, please pay to our own order at the agency of the City Bank, Toronto, one hundred and forty-seven pounds 13-9, currency, for value received.

"BREWSTER, MULHOLLAND & Co.
" To Messrs. Pringle, Daniels & Co.,
"Uxbridge, C. W.
" Accepted, Pringle, Daniels & Co."

"MONTREAL, 20 *Jan.*, 1859.
"Messrs. Brewster, Mulholland & Co.:
" DEAR SIRS — The above is a copy of an acceptance of the late firm of Pringle, Daniels & Co., for one hundred and forty-

seven pounds 13-9 currency, which became due and payable on the 10th — 13th February, 1858, and is now in your hands unpaid. Without in any manner acknowledging, either directly or indirectly, to be in any way liable for the above debt, still to avoid the trouble and annoyance of defending myself at law, from being made liable as a partner in the said firm of Pringle, Daniels & Co., which allegation I now deny, I hereby bind myself and agree to pay to Brewster, Mulholland & Co., or their order, in twelve months from this date, the above sum of one hundred and forty-seven pounds 13-9, with interest at the rate of seven per cent per annum, from its maturity till actual payment be made, should they not collect it from the estate of Pringle, Daniels & Co., in the meantime.

"MOSES BARTLETT."

The plea was the general issue. This instrument was written by Mulholland under the circumstances detailed in the record. The plaintiff in the action sought to show that defendant was a member of the firm of the drawees and acceptors of this bill, Pringle, Daniels & Co., which, if so, established his legal liability, and was a sufficient consideration for his promise. On this question there is some conflict in the testimony, but the great preponderance, we think, is that defendant never was at any time a member of that firm, or under any obligations to answer for their contracts, or pay their debts. He was a member of the firm of "H. Daniels & Co.," a firm which had been doing business many years prior to this transaction, at a place called "Brookline," distant eighteen miles from "Uxbridge," the place of business of Pringle, Daniels & Co., the acceptors of the bill. This firm of H. Daniels & Co. was, as late as March 5, 1857, composed of Henry Daniels and George W. Coulston, in the proportion of two-thirds interest in Daniels and one-third in Coulston. In May following the defendant purchased of Daniels one-half of his interest in the firm, and thereby became a partner on an equal footing with Daniels and Coulston. The name of the firm was not changed. On the 8th of March,

1857, W. A. Pringle, H. Daniels and George W. Coulston formed a co-partnership under the name and style of Pringle, Daniels & Co., at Uxbridge. There was some talk of defendant's taking an interest in this firm, but, after examining into its condition, he declined. The business of the two firms was separate and distinct, Pringle managing the business of Pringle, Daniels & Co., and Coulston that of H. Daniels & Co.

In November, 1857, soon after the acceptance of the bill by the firm of Pringle, Daniels & Co., they made an assignment for the benefit of their creditors, which was signed by Pringle, Daniels and Coulston, and simultaneously with this H. Daniels individually made an assignment. The firm did not make an assignment, but ceased to do business, and defendant, still a member of the firm, was appointed agent to manage its affairs and wind up the business, which he did satisfactorily by paying the debts in full.

Brookline was the residence of the defendant, and the place of business of the firm of H. Daniels & Co. This place is distant from Montreal three hundred and fifty miles or more. When on a visit to that city for the purpose of getting an extension from the creditors of H. Daniels & Co., of whom the firm of Brewster, Mulholland & Co. represented here by the plaintiff, were one, the defendant was successful, and when he had accomplished this object, Mulholland presented to defendant this bill of exchange, and threatened immediate suit on it, against defendant, as a member of the firm of Pringle, Daniels & Co., the drawees and acceptors, unless he arranged it. This threat produced the writing on which this action was brought, and set out *supra*. These facts appear from the testimony in the record.

The defense is, there was no valid consideration for the instrument and none is expressed in it. If this be so, then the finding of the jury was right and the judgment should stand, and this is the important question in the case.

Forbearing to sue is admitted on all sides to be a good consideration, for which assumpsit will lie. 1 Ch. Pl. 101. Ap-

pellant's counsel has presented an able review of the British and American cases bearing upon this subject, by which it will be seen the earlier cases held the law to be, that the forbearance of a suit threatened upon an unfounded claim, was not a valid consideration for a contract, and the more modern cases to which we are referred do not seem to be entirely harmonious. Among the references to the latter is *McKinley* v. *Watkins*, 13 Ill. 140, where it was held, if a party threatens to sue, honestly supposing he has a good cause of action, it will uphold a contract fairly entered into in order to avoid the suit. And it was further said, the compromise of a doubtful right is a sufficient consideration for a promise, and that it is immaterial on whose side the right ultimately turns out to be, but in order to support the promise there must be such a claim as to lay a reasonable ground for the defendant making the promise, and then it is immaterial on which side the right may ultimately lie, referring to *Edwards* v. *Baugh*, 11 Mees. & Wels. 641, and *Perkins* v. *Yay*, 3 Serg. & Rawle, 331. *Knotts et al.* v. *Preble*, 50 Ill. 226, is also cited.

We understand appellant. as insisting that the cases cited, those of this court included, hold that if a person, in good faith, believing he has a good cause of action against another, has made inquiries, heard of testimony by which he could sustain it, and is about to sue, and the other party does not desire a suit, that a written promise to pay the claim at a future day, given to avoid the suit and accepted by the threatening party who forbears his suit, has all the elements of a binding contract which can be enforced at law.

. We do not think the cases from this court cited above go to that extent, and the only English case cited most approvingly (*Cook* v. *Wright*, Langdell's Sel. Cases on Contracts, 333), would seem to go that far. The case in 13 Ill. holds, in order to support the promise there must be such a claim as to lay a reasonable ground for the defendant making the promise. What reasonable ground for defendant's promise is shown in this case? He never saw or heard of the bill drawn on Pringle,

Daniels & Co., until this visit to Montreal in January, 1859, a long time after it had been accepted by that house. He had no interest in knowing any thing about it, as he never had been connected with that firm as a member, and he distinctly declared to the plaintiff, who drew the instrument, that he was not a partner in that firm, and denied all liability, directly or indirectly, on that bill.

The case from 50 Ill. does not sustain appellant, for there it was held, notwithstanding it was shown the maker of the note was impressed with the belief he was in some measure responsible for the loss of payee by the fire, that in fact the payee had no claim upon the maker of the note, and there was no consideration for the note.

In the elementary treatises on this subject, the doctrine will be found to be, that an agreement to forbear legal proceedings to enforce a well founded claim, is a valid consideration for a promise. 1 Pars. on Con. 365; Chitty on Con. 33. The last mentioned author further says, in order to render the agreement to forbear and the forbearance of a claim a sufficient consideration, it is essential such claim should be sustainable at law or in equity, and the consideration will fail if it appear the demand was utterly without foundation.

The result of the authorities, as we are inclined to think, is, to make forbearance a good consideration, there must be a well founded claim in law or equity forborne, or there must be a compromise of a doubtful right. A compromise implies the yielding of a part of a claim. There is nothing of that kind in this case. The claim was, that appellee was a partner of the acceptors of the bill, and a demand made for instant payment or a suit to enforce the collection. Appellee might well have been surprised at such a demand, it being for the first time made known to him such a paper existed. He knew and so told appellant he was not liable on the paper as a partner. What was he to do? He was at Montreal for the first time in his life, nearly four hundred miles from his home and his friends, the demandant in the midst of both, giving him a most decided

advantage in any law suit he might commence, and who would most probably hold the defendant by a capias and incarcerate him unless some satisfaction was given, dictated the writing which appellant drew up, and is now the subject of this controversy. It seems to us quite clear here was no compromise of a doubtful claim, but a wrongful assertion of a claim, which appellant, when the instrument was executed, had strong reasons for believing had no valid existence as against the appellee. Circumstances very much affect cases. Appellee was among strangers, threatened by a mercantile house of high standing, who, to relieve himself from the embarrassment of his position, executed this writing, there being at the time no ground whatever in law or equity to charge him with this debt. We cannot say, forbearing to prosecute an action to recover this demand, should, under the circumstances, be held as a valid consideration for this promise, and the court below took a correct view of the case. We cannot see how the jury could have found otherwise than they did. The instructions were as favorable to appellant as he could ask, and on a careful examination of the whole record, we are satisfied justice has been done, and we affirm the judgment.

*Judgment affirmed.*