Continental and Commercial Trust and Savings Bank, formerly The American Trust and Savings Bank, Trustee for Contractors Supply and Equipment Company, Appellant, v. The Lantry Contracting Company, Appellee.

## Gen. No. 19,818.

1. NOTICE, § 3*—*when doctrine of constructive notice cannot be invoked.* The doctrine of constructive notice is resorted to for the purpose of preventing a person from doing an act which will work injury to another, and cannot be invoked to charge a person with assent to a fraud practiced upon him.

2. APPEAL AND ERROR, § 1725*—*when decision on former appeal not conclusive on a subsequent one.* A decision of the Appellate

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Con. & Com. T. & Sav. Bk. v. The Lantry Con. Co., 189 Ill. App. 296.

Court on a former appeal is not conclusive on a subsequent appeal, where there is nothing in the abstract or opinion on the former appeal to show that the evidence on the second trial was substantially the same as on the first.

3. COMPROMISE AND SETTLEMENT, § 5*—*when arrangement does not constitute compromise agreement.* An arrangement between debtor and creditor with reference to a statement of an account sent to the debtor, where the creditor reduced the amount by making certain corrections but refused to make any allowance that the debtor insisted should be made, *held* not to constitute a compromise agreement.

4. PAYMENT, § 29*—*when evidence sufficient to show payment by third person.* In an action by a supply company against a contracting company to recover a sum claimed to be due on account for machinery and supplies furnished, where the defense was that a certain person connected with the defendant company had, by an arrangement with an officer of the plaintiff company, directed that a part of a sum paid the latter company for him should be credited to the defendant company, *held* that a verdict for the defendant company was sustained by the evidence.

Appeal from the Municipal Court of Chicago; the Hon. JOHN K. PRINDIVILLE, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed October 13, 1914.

FRANK T. MURRAY and BITHER, GOFF & FRANCIS, for appellant.

HELMER, MOULTON, WHITMAN & WHITMAN, for appellee; ROLAND D. WHITMAN, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by plaintiff, the trustee in bankruptcy of the Contractors Supply and Equipment Company, called herein the Supply Company, from a judgment of *nil capiat* in an action brought against The Lantry Contracting Company, called herein the Contracting Company, on the following instrument:

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

298    APPELLATE COURTS OF ILLINOIS.

Con. & Com. T. & Sav. Bk. v. The Lantry Con. Co., 189 Ill. App. 296.

"THE LANTRY CONTRACTING CO.
Paola, Kansas, Aug. 29th, 1908.
C. A. Morse, Chief Engineer,
Topeka, Kansas.
Dear Sir:—

Please pay to The Contractors Supply & Equipment Company, Thirty-eight Hundred Seventeen 69/100 Dollars, same being in full of all claims against The Lantry Contracting Company, and charge to our account.

It is understood that the garnishment suit brought by said Contractors Supply & Equipment Company is to be dismissed at cost of said Company.

The Lantry Contracting Company,
By T. T. Kelly,
Secretary & Treasurer."

The defendant corporation in 1907 and the first two months of 1908 was engaged in constructing a tunnel through the Raton Mountains and received machinery and supplies for such work at Lynn, New Mexico. Of this corporation Charles I. Lantry was president up to January 1, 1908. The Lantry Construction Company, another corporation, in September, 1907, and afterwards, carried on business as a contractor at Duluth, Minn., and of this corporation Lantry was an officer. In August, 1907, and afterwards, Lantry, under the name of Lantry Ballast Company, had a contract to do certain work for the Tidewater Construction Company in Virginia. The two corporations and Lantry as an individual, trading under the name of the Lantry Ballast Company, ordered machinery and supplies from the Supply Company and that Company charged all the articles furnished on such order to the defendant, the Contracting Company. The Supply Company sent the following statement or voucher to the Tidewater Company about September 14, 1907:

"To Contractors Supply & Equipment Co.
Old Colony Bldg.
Please receipt and
return promptly to

Assistant Treasurer
Tidewater Construction       'Address Chicago, Ill.
Company, Norfolk, Va.
Tidewater Construction Co.
          Norfolk, Virginia, Sept. 18, 1907.
                    P-5933.

9/14   For 2 - 150 HP Tubular Boiler com-
          plete with fittings, pipe connections
          and stacks..........................$2,200.00
          1 - 175 H.P.-Buckeye Automatic En-
          gine with all fittings................ 1,500.00
          1-Cross compound two stage Lane &
          Bodly Air Compressor, complete with
          Fittings and Air receiver........... 1,500.00
          1-#7½ Symons Gyratory Car....... 2,600.00
          1-#5 Symons Gyratory Car........ 1,500.00
                                                 _____
I.A.B.                          .             $9,300.00

     The above is a correct statement of account as
audited.
     F. C. Uhlman           John J. Correll,
                                 Assistant Treasurer.

Received Chicago 9/21 1907 of Tidewater Construc-
     tion Company Ninety-three Hundred....Dollars
In full for the above account.
                    Sign   Contractors Supply &
                    here     Equip. Co.
     ..................Witness       By Geo. L. Smith,
                                          Secretary.''

and received from that Company $9,300 September
21st as stated in the receipt above set forth. The first
articles shipped by the Supply Company to the Lan-
try Construction Company at Duluth were shipped
and charged September 21, 1907, and all the articles
shipped to Duluth were paid for by the Lantry Con-
struction Company. Prior to September 14th the
Supply Company had made but one shipment to the
Tidewater Company, and this was charged August

300    APPELLATE COURTS OF ILLINOIS.

Con. & Com. T. & Sav. Bk. v. The Lantry Con. Co., 189 Ill. App. 296.

24th and amounted to $649.50; there had been no communication between the two corporations and it is clear the $9,300 paid by the Tidewater Company to the Supply Company was paid under some arrangement or agreement between the Tidewater Company and Lantry.

We think that from the evidence the jury might properly find that the arrangement was that the Tidewater Company should render financial aid to Lantry by advancing to him the cost of machinery provided by him for the work, and that this included not only advances for machinery actually delivered on the ground, but machinery purchased by Lantry and shipped to Virginia for use in the work; that in forwarding the voucher to the Tidewater Company, the Supply Company acted for and represented Lantry, and that the $9,300 paid by the Tidewater Company to the Supply Company was paid to that Company for Lantry; that the two tube boilers charged in the voucher at $2,200 were bought by Lantry August 20th of the Interstate Equipment & Engineering Company for $1,400; that the Buckeye Engine charged in the voucher at $1,500 was bought by Lantry of the same Company August 20th for $1,000; that the air compressor charged in the voucher at $1,500 was bought by Lantry of the same Company August 20th for $1,450; that Marsh was the general manager and treasurer of the Supply Company and president of the Interstate Company, and that Smith was the treasurer of both Companies; that Marsh for the Supply Company claimed that $4,399.60 was due from the Contracting Company to the Supply Company, and Lantry directed the Supply Company to pay the amount due the Supply Company from the Contracting Company out of the $9,300 to be received by it from the Tidewater Company, and that he would come in later and adjust the balance; that Lantry made a draft on the Contracting Company for $4,399.60 to

reimburse himself for the money he had directed the Supply Company to take from the $9,300 so to be received from the Tidewater Company and apply it in payment of the indebtedness due from the Contracting Company to the Supply Company, and the Contracting Company paid the draft.

Lantry suffered a nervous breakdown in October, 1907, and spent much of the time between that date and August 29, 1908, in a sanitarium. He ceased to be president of the Contracting Company January 1, 1908, and the evidence tends to show that he was unable to transact business between that date and August 29th; so no one connected with the Supply Company other than Lantry knew before August 30, 1908, either of the arrangement of Lantry with the Tidewater Company under which the $9,300 was advanced to Lantry, or of the arrangement between Lantry and Marsh for the collection of the $9,300 by the Supply Company from the Tidewater Company, and Lantry's direction to apply $4,399.60 of the money so collected to the credit of the Contracting Company. The Supply Company made demand on Lantry for the payment of money on account and January 24, 1908, Trevor, assistant general manager of the Company, stated to John H. Maley, the personal representative of Lantry, that the Supply Company had no claim against the Contracting Company. Soon after that time the officers of the Supply Company learned that Lantry was insolvent and from that time the claim was made that the Contracting Company, and not Lantry, trading under the name of the Lantry Ballast Company, was indebted to the Supply Company. T. T. Kelly, the secretary and treasurer of the Contracting Company, took charge of the business and affairs of that Company and of its office at Paola, Kansas, after Lantry ceased to be president. In August, 1908, he sent Stephen A. Maley, who had been a foreman for the Contracting Company in New Mexico and a

foreman for Lantry, trading as the Lantry Ballast Company in Virginia, to Chicago to see the Supply Company about the claim of that Company against the Contracting Company. August 28th Maley called on Marsh, the general manager and treasurer of the Supply Company and the president of the Interstate Engineering & Equipment Company. It was with Marsh that Lantry, September 14, 1907, made the arrangement by which the Supply Company, acting for and representing Lantry, as has been said, received the $9,300 from the Tidewater Company. Marsh on cross-examination testified that he could not say that Lantry did not direct that $4,399.60 out of the $9,300 received from the Tidewater Company should be credited on the Contracting Company's account. He further testified that he told Maley that Lantry had not paid $4,399.60 to apply on the Contracting Company's account. Maley and Marsh agreed August 28th that certain reductions should be made from the claim of the Supply Company, but did not conclude their examination of the entire account, and it was arranged that Maley should return the next day to resume the examination. When he returned the next morning he found that Marsh had been discharged and that George D. Smith, who had been secretary of the Supply Company, was in charge of its office and affairs. Smith refused to talk with Maley and took him to the offices of the Company's attorneys, who had begun for the Supply Company a suit in attachment against the Contracting Company, in which was garnished a large sum of money due from the Santa Fe Railroad Company to the Contracting Company. It was then agreed that the Supply Company would allow certain credits which reduced the amount claimed to $3,817.69. Maley then, with the knowledge of Smith and King, who assisted in drafting the telegram, telegraphed Kelly to send a draft to the Supply Company for $3,817.69, and that it was understood

that the garnishment suit should be dismissed. On the receipt of this telegram Kelly drew and forwarded to the Supply Company the instrument sued on. Maley did not know where Lantry was until August 30th, when he received a letter from him and found him at a hotel in Chicago where he was stopping under the name of Charles J. Lawler. He told Lantry that the Supply Company found that Lantry had paid the $4,399.60, and Lantry then told him of the arrangement he made with Marsh to place $4,399 out of the $9,300 which Marsh was to collect for him from the Tidewater Company to the credit of the Contracting Company. On receiving this information Maley telegraphed Kelly at Paola, Kansas, that he had better take immediate steps to stop payment on the order. Payment was stopped but the suit of the Supply Company was not dismissed until May 18, 1909, after the present suit was begun.

From the evidence the jury might properly find that both Marsh and Smith represented and said to Maley that the Supply Company had not, on the order of Lantry, applied $4,399.60, or any other sum out of the $9,300 collected by the Supply Company from the Tidewater Company, on the amount due that Company from the Contracting Company, when in truth and in fact it had applied $4,399.60 of the $9,300 collected on the indebtedness due the Supply Company from the Contracting Company, and that the Contracting Company relied on the statements so made to Kelly and Maley. It is true that the arrangement was made by Lantry, the president of the Company, and the Company therefore had constructive notice of the arrangement, but the doctrine of constructive notice is resorted to for the purpose of preventing a person from doing an act which will work injury to another, and cannot be invoked to charge a person with assent to a fraud practiced on him.

The contention of appellee is that the jury might from the evidence properly find the issues joined on

the plea that the instrument sued on was made and delivered under the erroneous conviction that Lantry had not prior thereto paid or caused to be paid to the plaintiff Company on behalf of the defendant $4,399.60, when in fact Lantry had made such payment, and also that the jury might properly find for the defendant on the issues joined on the plea that the plaintiff falsely and fraudulently, with intent to deceive the defendant, represented to it that Lantry had not paid to plaintiff in behalf of defendant $4,399.60, when in fact he had made such payment, and that defendant relied on such representation, etc.; and also that the jury might properly find for the defendant on the issue joined on the plea that there had been paid by plaintiff to defendant $4,399.60, and at the time when the instrument sued on was made and delivered the defendant was not indebted to the plaintiff, and that the consideration for said instrument has failed, etc.

The first contention of appellant, that the decision on the former appeal, *American Trust & Sav. Bank v. Lantry Contracting Co.,* 171 Ill. App. 626, is conclusive on the parties on this appeal, is without merit. The transcript of the record on the former appeal was removed to the Supreme Court and has not been brought before us. Lantry died before the second trial and his testimony on the former trial was read on the second trial; but all the other witnesses testified on the second trial, and there is nothing in the abstract or opinion on the former appeal to show that the evidence on the second trial was substantially the same as on the first.

The second contention, that the merits of the controversy cannot be inquired into because the agreement in relation to the instrument sued on was a compromise agreement, is also without merit. The arrangement made between Smith and King representing the plaintiff and Maley representing the defendant

was not a compromise agreement. Smith and King made certain corrections in the statement of account sent to defendant to correct errors, and they refused to make allowances that Maley insisted should be made, and denied positively that the plaintiff had received $4,399.60 from the Tidewater Company for Lantry with directions to place the same to the credit of the defendant. As was said in *Mulholland v. Bartlett*, 74 Ill. 58-63: "A compromise implies the yielding of a part of a claim." There is nothing of that kind in this case.

Lantry, as has been said, testified that he directed that the Supply Company should apply $4,399.60 of the money that Company was to collect for him from the Tidewater Company to the credit of the Contracting Company. The testimony of Marsh not only does not contradict but, on the contrary, tends to corroborate the testimony of Lantry. The $9,300 which the Supply Company collected from the Tidewater Company was Lantry's money and he had the right to control its application. There is no evidence tending to show that Lantry authorized or directed the Supply Company to apply any part of the $9,300 on his indebtedness to the Interstate Equipment and Engineering Company, but without such authority, and in violation of the direction of Lantry, the Supply Company applied the greater part of the $9,300 to payment of Lantry's indebtedness to the Interstate Company.

It is not disputed that if the $4,399.60 had been placed by the Supply Company to the credit of the Contracting Company nothing would have been due from the Contracting Company to the Supply Company at the time the instrument sued on was executed.

The contention of appellant that the $9,300 was paid to it by the Tidewater Company to pay appellant for goods ordered by Lantry of appellant is not supported by the evidence. The voucher on which the Tidewater Company paid the Supply Company $9,300 contains

three items, amounting to $5,200, which the evidence shows Lantry had bought of the Interstate Equipment & Engineering Company for $3,850, and paid for prior to September 14, 1907. The Supply Company was not entitled to apply any part of the $9,300 it received from the Tidewater Company in payment of the articles Lantry bought from the Interstate Company, first, because Lantry had paid for such articles before the Supply Company received the $9,300, and second, because no authority from Lantry to make such application is shown by the evidence.

We find no reversible error in the instructions, and we cannot say that the verdict is so manifestly against the evidence as to warrant a reversal of the judgment, and it will be affirmed.

*Affirmed.*