G. S. F. Corporation, doing business as Louden Hill Farm, Inc., and Fred Vander Meulen *v.* Milk Marketing Board of the Commonwealth of Pennsylvania.

Argued December 7, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI (who has since been appointed to the Supreme Court of Pennsylvania and did not participate in the decision).

*Morey M. Myers,* with him *Gelb & Myers, Thomas L. Wenger,* and *Rhoads, Sinon and Reader,* for appellants.

*Donn L. Snyder,* with him *Berman & Boswell,* for *amici curiae.*

*Anthony W. Novasitis, Jr.,* Assistant Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, February 8, 1971:

The case here presented is an appeal from Official General Order A-761 issued by the Pennsylvania Milk Marketing Board, effective September 14, 1970. Order A-761 affects Milk Marketing Area No. 3, known as the Scranton-Wilkes-Barre Milk Marketing Area.

In 1968 the Pennsylvania legislature amended the former Milk Control Law, re-entitling it the Milk Marketing Law and renaming the Milk Control Commission to be thereafter designated the Milk Marketing Board. Act of July 31, 1968, P. L. No. 294; 31 P.S. 700j et seq. In the July 31, 1968, amendment the legislature added Section 704 (31 P.S. 700j-704) :

"Uniform system of accounts

The board shall, after reasonable notice and hearing, establish systems of accounts (including cost finding procedures) to be kept by licensees and shall prescribe the manner and form in which accounts are to be kept. Every licensee shall establish such systems of accounting and shall keep accounts in the manner and form required by the board in order to facilitate the costs studies provided for in Section 801." Section 801 (31 P.S. 700j-801), entitled Requisites of Orders Fixing Price of Milk, sets forth the procedure for fixing prices of milk.

Although the Act of July 31, 1968, became effective September 29, 1968, and the hearing upon which Official General Order A-761 was based was held on July 8, 1970, neither the Milk Marketing Board nor the interested parties attending and participating in the hearing had the benefit of uniform systems of accounts. Obviously, the cost studies provided for in Section 801 were not "facilitated" by a uniform system of accounts.

It is appellants' position that the requirement of a uniform accounting system is mandatory and is a sine qua non to a valid price fixing procedure. Appellee, the Milk Marketing Board, takes the position that the requirements of Section 704 are directory only and the Board could hold hearings while it was proceeding with what might be generously referred to as "all deliberate speed" to establish the uniform accounting system. We think the position of appellants is sound and that the record must be remanded to the Board to hold hearings to test the validity of Official General Order A-761 using the uniform accounting system now in effect.

All parties agree in their arguments and in the briefs filed that whether the requirements of Section 704 are mandatory or directory is a question of legislative intent. *See Allegheny Co. v. Pa. P. U. C.*, 192 Pa. Superior Ct. 100, 159 A. 2d 227 (1960).

For many years the problem of the price control of milk has been one of the most vexing in the many problems of consumer protection and support of the farm program. *See Government's Role in Pricing Fluid Milk in the United States, Agricultural Economic Report No. 152* (Economic Research Service, U. S. Department of Agriculture, December 1968). In Pennsylvania many studies have been made and, starting at least as early as 1962, one uniform recommendation has been made—improve the basis for evaluating the price fixing process by getting proper statistics or discontinue the program.

"Milk control in Pennsylvania should be improved if it is to be continued. Well-understood objectives with some means for developing a continuing program to attain these objectives is of importance. In developing objectives and program, consideration should be given to the extent to which the activities of the Commission should and can interfere with the impact of economic forces. *A badly needed improvement should take place in the development of factual information to guide the industry, to aid the Commission in making decisions and to provide a basis for evaluating the decisions which the Commission makes.*" Pierce, *Evaluating Milk Control in Pennsylvania, Farm Economics* (September 1, 1962). [Emphasis supplied.]

In 1965 Governor Scranton appointed a milk control inquiry committee of ten members. The complexity of this problem is indicated by the fact that with only ten members, three reports were filed, one by the majority, one by the public members, and one by the minority. One recommendation was uniform in all reports—the Board should press on vigorously to establish a uniform accounting system. The majority in its report filed April 1, 1965, in Recommendation 5 stated: "Establishment of a uniform system of accounting to provide a more equitable analysis of industry operations, and vigorous enforcement thereof." The Public Members Report, filed February 1, 1965, stated: "We recommend that the Commission take vigorous steps, and continue action already under way to: b. Adopt a satisfactory system of uniform accounts and reporting forms for milk dealers."

On September 29, 1965, a joint legislative committee, established by resolution of the House and Senate, made its report and recommendations. The recommendations were divided into those requiring legislation and those that could be done administratively. Ad-

ministrative Recommendations, No. IV was: "The Commission should prescribe uniform accounting procedures to be used in preparing profit and loss statements to be submitted to the Commission."

Despite all of the above, the Board failed to act to set up uniform accounting systems. Can there be any doubt that the legislative intent in 1968 when it adopted Section 704 was to make a uniform accounting system mandatory rather than directive? We think not.

At the hearing on July 8, 1970, the Milk Marketing Board's witness testified that the uniform accounting system "instruction manual and the uniform financial reporting will now be effective for all reports and all financial statements submitted for and after the year 1970." (Record page 58a).

A situation similar to the present one was considered by the Supreme Court of Pennsylvania in *Colteryahn Sanitary Dairy v. Milk Control Commission*, 332 Pa. 15, 1 A. 2d 775 (1938). In that case the Commission on December 21, 1936, had fixed a price of $3.25 per hundredweight. In 1937, after hearing, the Commission issued Order A-18 fixing $3.19. From this order an appeal was taken to Dauphin County Court. The Dauphin County court granted a supersedeas and later fixed a price of $3.06. While the appeal from Order A-18 was pending before the Dauphin County Court, the Commission, on its own motion, called another hearing and issued Order A-22 fixing the price at $3.15. Thereafter the Dauphin County Court fixed $3.03 1/3 as the price. All of these orders were appealed and the appeals were combined. The Supreme Court emphasized that the problems all resulted from the Commission having insufficient evidence and the interested parties not having a proper opportunity to test the reliability of the Commission's evidence. The Supreme Court ordered the Dauphin County Court to return the record

to the Commission for further hearing and consideration in conformity with its opinion; the price was to remain at the rate fixed in Order A-22 pending the result of the further hearing.

Accordingly, we enter the following

## ORDER

AND Now, this 8th day of February, 1971, upon consideration of the foregoing case, it is ordered that the record in this proceeding be returned to the Milk Marketing Board for further hearing and consideration in conformity with this opinion, with the prices as fixed in Official General Order No. A-761 to remain in effect meanwhile.

---

DISSENTING OPINION BY JUDGE MANDERINO:

I agree with the majority that the legislative requirement in Section 704, concerning a uniform system of accounts, is a mandatory provision which the Milk Marketing Board is required to follow. That section, however, did not mandate that the Board had to institute a "uniform system of accounts" immediately upon the legislative enactment. That section specifically states that it is mandatory for the Board to establish such systems of accounts after "reasonable notice and hearing".

The question before this court is whether or not the Milk Marketing Board "abused its discretion" and this depends upon whether the Board was unreasonable in the time it took to establish the uniform system of accounts.

The parties before the court in this case agreed that a satisfactory system of accounts had been put into effect for the year 1970. The mandatory section of law became effective on September 29, 1968. For the balance of the year 1968, and for the year 1969, the Board

did not have in effect the mandate of Section 704, but did provide for a uniform system effective with the beginning of the year 1970.

Unless a court in judicially reviewing the action of an administrative agency can state that the agency clearly abused its discretion, the court should not substitute its judgment for that of the agency. It is the agency which is the expert body, not the court. The evidence before this court was not sufficient to clearly establish that the time taken by the Board to follow the mandate of the law was an unreasonable time. It may be that this court or some other administrative agency could have established a "uniform system of accounts" earlier than was done in this case. That is not the question before us. It has not been established that the Board abused its discretion. I would thus hold that the Board has followed the mandate of the 1968 legislation in that it did establish, as the parties conceded, a "uniform system of accounts" for the calendar year 1970.