## G.S.F. Corporation, et al. *v.* Milk Marketing Board.

Argued November 3, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS.

*Morey M. Myers,* with him *Donald G. Douglass, Gelb & Myers,* and *Thomas Wenger, Rhoads, Sinon & Reader,* for appellants.

*Charles M. Guthrie,* Assistant Attorney General, for appellee.

*Willis F. Daniels,* with him *Daniels and Swope,* for intervenor, Greater Pittsburgh Dairy Industry Association, et al.

OPINION BY JUDGE KRAMER, December 29, 1971:

This is an appeal from General Order No. A-768 of the Milk Marketing Board (Board) issued June 15, 1971, to become effective June 21, 1971. General Order No. A-768 was intended by the Board to establish a "Uniform System of Accounts" for licensed milk dealers under the [Pennsylvania] Milk Marketing Law, Act of July 31, 1968, P. L.       , Act No. 294, 31 P.S. 700j-101 et seq.

General Order No. A-768 came about as a direct result of (1) Section 704 of the Milk Marketing Law, *supra,* 31 P.S. 700j-104, which required the establishment of a Uniform System of Accounts and (2) a decision of this Court (filed February 8, 1971) in the case of *G.S.F. Corporation, et al. v. Milk Marketing Board,* 1 Pa. Commonwealth Ct., 216, 273 A. 2d 756 (1971) in which the matter was remanded to the Board for the purpose of holding hearings to test the validity of a milk pricing order, General Order No. A-761, using a Uniform System of Accounts as required by the Statute.

Section 704 of the Milk Marketing Law, *supra,* reads as follows: "The board shall, after reasonable notice and hearing, establish systems of accounts (including cost finding procedures) to be kept by licensees and shall prescribe the manner and form in which accounts are to be kept. Every licensee shall establish such systems of accounting and shall keep accounts in the manner and form required by the board in order to facilitate the costs studies provided for in Section 801." Section 801 of the Law provides the procedures and requisites of orders of the Board fixing the price of milk and other regulated dairy products.

An integral part of the history of this case is the determination by this Court in the *G.S.F. Corp., et al.* case, cited above, and in the case of *City of Pittsburgh v. Milk Marketing Board,* 1 Pa. Commonwealth Ct. 300, 275 A. 2d 115 (1971), that the Board had not followed the mandate of the Legislature as set forth in Section 704, quoted above, for a period of over two years. As a result the Board was directed by this Court to establish as soon as possible a Uniform System of Accounts. Thereafter the Board was directed to test the validity of the price fixing orders in both of those cases using the Uniform System of Accounts. The *City of Pittsburgh* opinion was handed down by this Court on

March 5, 1971. No appeal was taken from the decisions of this Court in either of these two aforementioned cases.

After holding a special hearing in April of 1971 in the *City of Pittsburgh* case, *supra,* as directed by this Court, the Commission mailed, on June 3, 1971, notices of another special hearing called for the purpose of considering and establishing the required Uniform System of Accounts. The appellants in this case apparently received their notice of this special hearing on June 7, 1971. The hearing was set for June 10, 1971, in Harrisburg. On June 8, 1971, the appellants notified the Board that it considered the notice inadequate and registered its objection on the basis that the Board had failed to give reasonable and timely notice. The Board by a letter dated June 8, directed to counsel for the appellants, acknowledged the Board's duty to give reasonable notice, but stated that it was the Board's opinion that reasonable notice had been given in view of the circumstances.

The hearing was held on June 10, 1971, and the appellants, together with counsel for the City of Pittsburgh (not an appellant in this case), entered their objections on the record to the holding of a hearing with less than what they deemed to be reasonable notice. Appellants participated at the hearing and were afforded the opportunity to cross-examine the Board's witness and to present evidence if they so desired. The appellants presented no evidence.

As stated earlier, the Board issued General Order No. A-768 on June 15, 1971, establishing a Uniform System of Accounts to become effective June 21, 1971, in which all milk dealers licensed by the Board were required to comply on or before September 15, 1971, and were directed to maintain all of the records, beginning with records dated January 1, 1971, in accordance with the Uniform System of Accounts.

The appellants took this appeal on July 9, 1971, based generally upon their contentions (1) that they were denied due process of law by the Board's failing to provide reasonable notice of the hearing and (2) that the Uniform System of Accounts established by the Board failed to carry out the statutory mandate in several specific areas. On July 29, 1971, the Board filed a Motion to Dismiss. The Greater Pittsburgh Dairy Industry Association and certain individuals were permitted to intervene. This Court on October 14, 1971, listed this matter for argument restricted solely to the Motion to Dismiss.

The Board's motion to dismiss is restricted to the argument that the appellants are not "parties aggrieved" by the establishment of a Uniform System of Accounts as set forth in General Order No. A-768, and that the appellants' petition for appeal fails to set forth in what manner they were aggrieved.

The Milk Marketing Law at Section 46, 31 P.S. 700j-901, states in pertinent part: "Any person aggrieved . . . by any other general action, rule, regulation or order of the board, may, within twenty (20) days after the effective date of such action, rule, regulation or order, file an appeal therefrom. . . ."

The courts in Pennsylvania have ruled on what constitutes an aggrieved party. In *Pennsylvania Commercial Drivers Conference, et al. v. Pennsylvania Milk Control Commission, et al.*, 360 Pa. 477, 483, 62 A. 2d 9, 12, 13 (1948), the Court said: "There is nothing to show that any of appellants is adversely affected by the order in the sense that he can be a person aggrieved by it within the meaning of section 901. The restriction of the right of appeal to persons aggrieved is as old as paragragh 9 of the Act of May 22, 1722 (citing cases). In Lansdowne Borough Board of Adjustment's Appeal, 313 Pa. 523, 525, 170 A. 867, 868 (1934), the controlling principle was stated to be: 'A cardinal principle, which

applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a *direct interest* in the subject matter of the particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a *direct interest* in the particular question litigated, *but his interest must be immediate and pecuniary,* and not a remote consequence of the judgment. The interest must also be substantial.' . . . But that interest in this proceeding is obviously not a direct interest, but an interest that is too remote to constitute a person aggrieved; it is not an interest that at the time the order was made was the subject of pecuniary consideration to appellants in any collective bargaining then in process; it may never become a subject of such consideration and therefore does not constitute a substantial interest in this proceeding affecting appellants. . . ." (Emphasis added.)

The Pennsylvania Supreme Court reaffirmed this ruling in 1966, in the case of *Louden Hill Farm, Inc. v. Milk Control Commission,* 420 Pa. 548, 550, 217 A. 2d 735, 736-7.

There is nothing in the record of this case that would indicate any pecuniary loss to be suffered by the appellants as a result of General Order A-768. If, under the statute and the decisional law, these appellants were bound by the adjudication establishing the Uniform System of Accounts in all future milk price fixing cases, then the same appellants would be viewed as "persons aggrieved." Such is not the case. With specific reference to the *G.S.F. Corp., et al. and the City of Pittsburgh, et al.,* cases, cited above, which brought about the necessity for the hearing and resultant General Order A-768, the test on whether the established Uniform System of Accounts satisfies the statutory mandate will be determined in the rehearings in both of those cases as directed by this Court. So that there is

no misunderstanding it is the ruling of this Court that the ruling on this Motion to Dismiss is not to be interpreted as a final determination as to the legality or conclusiveness of the Uniform System of Accounts established by General Order A-768. Following this Court's directive to test the validity of the milk prices fixed by General Order No. A-761, these appellants must be given every opportunity to cross-examine any witness presented by the Board. The appellants will be afforded the opportunity to present whatever evidence they desire to show that the Board has not met the statutory mandate and the direction of this Court insofar as it applies to the Uniform System of Accounts. In view of the fact that the appellants will be afforded these opportunities to test the Board's compliance with the statutory mandate and the directions of this Court, we hold that they are not "parties aggrieved," and consequently have no standing to file this appeal. The test of the validity of a Uniform System of Accounts in the price fixing process is its application in a specific case and not in a semantical exercise.

We want it to be clearly understood that regulatory agencies in this Commonwealth cannot act in an unreasonable manner in holding mandated hearings for the establishment of its orders, rules and regulations. In determining whether or not an administrative agency has acted improperly or has failed to carry out that which the Legislature intended, all of the circumstances surrounding the purpose of the hearing must be taken into account. In this case we must take note that this Board was directed to hold several hearings on matters of major import under which a whole new approach was directed to be made in the matters of fixing controlled milk prices. As a result of the prior dilatory practices of this Board, this Court spoke in urgent tones in its opinions, and it is the sense of this Court that the Board has attempted to carry out, with reasonable dispatch,

.the directions of this Court. The ultimate determination upon whether this Board has met the statutory mandate and the directions of this Court will be determined through the adjudications made at the conclusion of the rehearings. Hearings in the *City of Pittsburgh* case have been concluded and December 21, 1971, has been set as the hearing date in the *G.S.F. Corporation* case. This Court is quite aware of the far-reaching effects of its recent opinions. They entail complicated and drastic changes. It is conceivable that these appellants will be satisfied with the Board's new approach to price fixing. If so, then the need for appeal will have been obviated. If they are not satisfied, they may then call upon this Court to once again review the actions of the Board.

Based upon the above analysis we hold that the appellants are not aggrieved persons within the legislative intent of Section 901, *supra,* of the Milk Marketing Law and we therefore

### ORDER

AND NOW, this 29th day of December, 1971, the motion to dismiss filed by the Milk Marketing Board of the Commonwealth of Pennsylvania is granted and the appeal of the G.S.F. Corporation, doing business as Louden Hill Farm, Inc., of Dimock, Pennsylvania, and Fred Vander Meulen, of 16 Welsh Hill Road, Clarks Summit, Pa., is hereby dismissed.

Judge ROGERS concurs in result only.