City of Pittsburgh et al., Petitioners *v.* Commonwealth of Pennsylvania, Milk Marketing Board, Respondent; Greater Pittsburgh Dairy Industry Association, and certain individual members thereof et al., Intervening Parties Respondent.

Schneider's Dairy, Inc. et al., Petitioners *v.* Commonwealth of Pennsylvania, Milk Marketing Board, Respondent; City of Pittsburgh and Richard S. Caliguiri, Mayor, Intervening Party Respondents.

Argued November 1, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

*Eugene B. Strassburger, III,* Deputy City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for City of Pittsburgh.

*Willis F. Daniels,* with him *Daniels and Swope,* for Schneider's Dairy, Inc., et al.

*Howard D. Brooks,* Assistant Attorney General, for Pennsylvania Milk Marketing Board.

OPINION BY JUDGE CRUMLISH, JR., May 23, 1978:

These cross appeals bring before us for review an order of the Milk Marketing Board (Board), Official General Order No. A-807, providing for certain increases in milk prices for Milk Marketing Area No. 5. The City of Pittsburgh (City), representing the consumers, is the appellant at No. 778 C.D. 1977, while Schneider's Dairy, Inc. et al., representing milk dealers within the affected area, are the appellants at No. 988 C.D. 1977. The Greater Pittsburgh Dairy Industry is an intervenor in the former appeal, while the City of Pittsburgh has sought to intervene in the latter.

Hearings on the subject of milk prices were held March 2, 3, and 4, 1977. A tentative order was issued on April 12, supplemented by the official order effective April 20.

## No. 778 C.D. 1977

In its appeal, the City first raises for our consideration its contention that the 3% rate of return on sales allowed to dealers by the Board in its findings is unnecessarily high and that, in fact, the effective rate of return is actually in excess of 3%. After a

thorough and exhaustive review of the record, we are convinced that the lack of adequate discussion and crucial findings of fact leading to the determination of 3% as a reasonable return does not enable us to perform our judicial role of review. Though counsel for the Board in its brief indicates that dealer testimony supports a return on sales of up to 6%, counsel for the City properly points out that the Board's reference to "dealer testimony" is its suggested findings of fact and conclusions of law. Despite the testimony of one witness for the dealers which indicated that the amount of price increases necessary to yield returns on sales of 6%, 3% and 2%, there was no testimony to indicate the reasonableness of any of these projected returns. The relevant portion of this testimony is as follows:

By Mr. Daniels (counsel for the dealers):

Q. . . . I am going to ask Mr. Herbein to request the Board to increase our gallon price in order that we would have a reasonable return of six percent before taxes, and three after on sales.

How much would the gallon price have to be increased?

. . . .

A. To accomplish six percent before tax, and to include in that calculation the cost increases that we have experienced, or are experiencing subsequent to September 30, requires a 19.56 cents increase per gallon.

It is readily apparent from this colloquy that the witness was asked to accept an assumption made by *counsel* as to the reasonableness of the return and merely proffered his opinion as to what cost per gallon increase was necessary to yield that return. To pass upon the merits of this appeal on the present

record before us would cast us in the role of making an independent judgment on the merits based upon the record before us, a role which we have indicated on many occasions is not one given to us by law nor one which we are qualified to assume. *West Penn Power Co. v. Pennsylvania Public Utility Commission,* 33 Pa. Commonwealth Ct. 403, 381 A.2d 1337 (1978).

This same reasoning is equally applicable to the City's second contention. The City urges us to hold that the store margin allowed by the Board lacks support in the record. The Board's finding on this issue follows, in part:

> Nothing appeared in this record concerning in-store handling costs or store margins. The Board closely monitors store margins in all areas of the State and therefore must rely on its general knowledge of the industry in writing this Order. We find that a 14% markup for stores is reasonable. . . . Applying 14% to the delivered cost of $1.31 . . . , we arrive at an out-of-store price of $1.49 per gallon. That price is the out-of-store price in this new Order.

Again, our thorough search of the voluminous record presented before the Board fails to reveal any evidence on this precise issue. As our Supreme Court stated in *Colteryahn Sanitary Dairy v. Milk Control Commission,* 332 Pa. 15, 21, 1 A.2d 775, 778-9 (1938):

> [T]he Commission may make its independent survey of the milk industry in the particular area to acquire a just and fair understanding of the problems before it. But the result of that survey should be placed on the record of the hearing before the Commission, and the parties who made the survey should be subject to such cross-examination as is proper. Interested parties should be accorded opportunity

to test the reliability of the Commission's evidence before an order is promulgated, revised or changed.

Though the close monitoring to which the Board refers may not, in this instance, refer to a formal survey, it is clear that the same logic applies. As the Court, in *Colteryahn, supra,* also stated:

It is the general intent and purpose of the Act that in the promulgation, revision or change of official orders fixing prices, a definite record should be made of all evidence produced before the Commission, *and all matters upon which it bases its order.* (Emphasis added.)

332 Pa. at 20-21, 1 A.2d at 778.

In this particular case, the City had no opportunity to test the reliability of the Board's evidence. Its so-called "general knowledge of the industry" was not made part of the record. We must conclude again, that, due to the lack of evidence in the record with respect to in-store margins, we cannot pass upon the merits of this question.

## No. 988 C.D. 1977

By Order of President Judge Bowman, the Board's motion to quash the dealers' appeal at No. 988 C.D. 1977 on the grounds that they (the dealers) are not aggrieved, was directed for argument at the same time as argument on the merits.

Section 901 of the Milk Marketing Law (Law), Act of April 28, 1937, P.L. 417, *as amended,* 31 P.S. §700j-901, provides that:

Any person aggrieved by an order of the board fixing, revising or amending the price at, or the terms upon, which milk may be bought or sold, or by any other general action, rule, regulation or order of the board, may . . . file an appeal therefrom . . . .

The Board, noting that the prices of milk were raised as a result of the order in question, alleges that the dealers cannot, therefore, be said to be aggrieved. In *G.S.F. Corp. v. Milk Marketing Board,* 4 Pa. Commonwealth Ct. 230, 284 A.2d 924 (1971), we said that the determination of whether a party is aggrieved depends upon whether that party has a *direct interest* in the subject matter of the litigation and whether that interest is both immediate and pecuniary and is neither remote nor insubstantial. Counsel for the Board has incorrectly characterized the holding of this case to stand for the proposition that to be aggrieved, a party must suffer a pecuniary *loss* as a result of the Board's order. We reiterate that *G.S.F. Corp., supra,* merely said that a pecuniary interest must be at stake. Since the dealers have alleged on the merits that the Board has failed to provide them with a reasonable return, we are of the opinion that they are in fact aggrieved within the meaning of Section 901. However, for the same reasons indicated with respect to No. 788 C.D. 1977, we are unable to rule on the merits of this appeal. As both appeals must be remanded, we decline to pass upon the merits of either.

Accordingly, we

## ORDER

AND Now, this 23rd day of May, 1978, it is hereby ordered that the record in this proceeding be remanded to the Milk Marketing Board for the purpose of its review and revision of Official General Order No. A-807 and, if necessary, modification thereof, consistent with the opinion to the end that its discussion, findings of fact and conclusions of law are sufficiently comprehensive to enable this Court to pass upon the merits of any appeal from such revised order, with the prices as fixed in Official General Order No. A-807 to remain in effect.