Lacey *v.* Rutter, Appellant.

Argued January 5, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Edmund K. Trent,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*T. Robert Brennan,* with him *Robert M. Dale* and *Brennan & Brennan,* for appellee.

OPINION BY MR. JUSTICE JONES, March 22, 1948:

This is an appeal from a decree in equity directing the dissolution and liquidation of a partnership and appointing a receiver for the purpose. The principal question involved concerns the correctness and propriety of the action of the court en banc in reversing a finding of fact of the chancellor and in substituting therefor a finding to directly opposite effect. A related question is whether the substituted finding is correct in fact. It so happens that, because of the rule of law which the learned chancellor applied to his findings of fact, the result which the decree *nisi* effected is fully confirmed and carried out by the final decree now here on appeal.

Joseph R. Lacey and Raymond T. Rutter were partners under an oral agreement entered into on or about October 1, 1934, in a restaurant and bar business, known as the Seventh Avenue Grill, in Homestead, Pennsylvania. By the terms of the oral agreement, the partnership was to continue for an indefinite period of time with each partner devoting his full time and energies to the enterprise. The business was so continued until February 11, 1942, when Rutter entered the military service of the United States. Some seven weeks later (March 30, 1942), Lacey did likewise. During the absence of both in the service, friends voluntarily operated the place for them. On March 9, 1944, Lacey received his service discharge because of a physical disability. Thereupon, he returned home and reassumed management of the partnership business. In November of 1944, while Rutter was at home on a furlough, he and Lacey discussed the prospect of continuing the partnership and also Rutter's possible purchase of Lacey's inter-

est in the business upon Rutter's discharge from the service which he then had reason to believe would eventuate shortly. The result of that conversation, according to a finding of fact of the chancellor, was that Lacey "did then and there verbally agree to sell his interests in said partnership business [to Rutter] for the price or sum of $2500".

Rutter received his discharge from the service on January 12, 1945, and returned to the business on February 1st following. From then on he was in sole possession and management of the business which he continued to conduct. Beyond that, he made improvements and contracted for repairs to be made. He also began negotiations to borrow (on a Government loan, for the most part, and from his mother, for the balance) the money necessary to pay Lacey in cash the specified consideration in full. However, by now, Lacey had changed his mind and refused to sell his interest to Rutter for $2500 but demanded a larger sum (at first, $3600, then later, $3400) which Rutter refused to pay. Lacey then filed his bill of complaint in the instant suit for the purpose of obtaining dissolution and liquidation of the partnership. Rutter, by his answer, sought specific performance of the alleged oral agreement of sale of November of 1944.

After hearing, the learned chancellor made findings of fact including the finding already mentioned as to the alleged oral agreement of sale. But, the chancellor adjudged that the contract, so found, was within the statute of frauds of the Sales Act and, being oral, was therefore unenforceable. Accordingly, the chancellor entered a decree *nisi* directing that the partnership be dissolved and appointing a liquidating receiver. Exceptions to the chancellor's conclusions of law and to the decree *nisi* were filed by the defendant while the plaintiff excepted to certain of the findings of fact, *inter alia*, the finding as to the alleged oral agreement of sale. The exceptions were argued before the court en banc

(consisting of the chancellor and two other judges), and thereafter a *per curiam* opinion was filed reversing the chancellor's finding of fact that the plaintiff had orally agreed to sell his partnership interest to the defendant for $2500. The opinion approved the equitable relief granted by the decree *nisi* and ruled further that, even had the alleged oral agreement existed as found by the chancellor, it would be unenforceable as violative of the statute of frauds relating to sales of personalty. While the learned chancellor, as a member of the court en banc, had sat at the oral argument on the exceptions, he died before entry of the final decree which, while in accordance with the *per curiam* opinion of the court en banc, also confirmed the decree *nisi*.

Concededly, it is an old and oft repeated rule that the findings of fact of a chancellor (having substantial support in the evidence), when approved and adopted by a court en banc, have the weight of a jury's verdict and are binding accordingly upon an appellate court: *Belmont Laboratories, Inc. v. Heist*, 300 Pa. 542, 546, 151 A. 15, and cases there cited. When, however, the findings of a chancellor have been overruled by a court en banc, while they are still entitled to great weight, they are no longer conclusive on appeal: see *Belmont* case, supra. The reason for the persistent force of a chancellor's findings was aptly stated by Mr. Justice SIMPSON in *Thorndell, Admrx. v. Munn*, 298 Pa. 1, 3, 147 A. 848, as follows: "The nature of the principal differences of fact between the chancellor and the court en banc, again compels us to call attention to the well-settled rule that though it is the duty of the latter to review carefully such of the findings of fact of the former as have been made the subject of exceptions . . ., yet great weight is to be given to those findings in cases where, as here, they depend, in large degree, on the credibility of witnesses whom he saw and heard, and whose testimony, for that reason, he is best able to weigh. . . . As the tone and manner of a witness not infrequently

indicate whether or not he is telling the truth; the rule above stated applies to findings of fact which are inferential, as well as those which have been expressly testified to . . ." Even so, a court en banc may, indeed should, reverse or reject unsupported or illogical findings of fact of a chancellor, putting upon the record at the same time a statement of its reasons for so doing: *Belmont* case, supra, at p. 548. It is there stated that "Where reasons are so given, it becomes the duty of an appellate court to fully and carefully examine them, together with the entire record, and determine whether the action of the court in banc is justified, keeping in mind the weight to which the original findings are entitled and also the reasons given for their overthrow". So examining the findings and the record in this case, we find the action of the court en banc to be well justified.

The court en banc, upon rejecting the chancellor's finding of fact that the plaintiff had agreed to sell his partnership interest to the defendant for $2500, substituted therefor the following finding, viz.; "Fourth: About the first day of November, 1944 the defendant returned to the business in Homestead and at that time discussed with the plaintiff the matter of purchase of the plaintiff's interest in the partnership but no agreement on the subject was entered into between the parties either then or at any other time". As the reason for its action in such regard, the court en banc in a contemporaneous written opinion said that ". . . the testimony is altogether too vague and uncertain to support a finding that an oral agreement of sale was entered into". It is obvious that the chancellor's special facility for judging the credibility of witnesses is of no present moment. The fact is that the court en banc accredited the oral testimony similarly to the chancellor but correctly found it to be insufficient in law for its proffered purpose. After a careful reading and consideration of the record testimony on the matter of the alleged oral agreement of sale, it is our opinion that the reason given by the court en

banc for rejecting the chancellor's particular finding of fact is sound and that the consequent resolution of the material issue of fact in the plaintiff's favor must be approved.

With the alleged oral agreement of sale thus out of the way, the defendant's sole ground of objection to the granting of the relief sought by the plaintiff vanishes. The right of a partner to a dissolution of his firm upon proper application in instances such as the present is expressly conferred by the Uniform Partnership Act: see, e.g., Section 31 (1) (b) of the Act of March 26, 1915, P. L. 18, 59 PS §93. The prayer of the plaintiff's bill was therefore rightly granted.

As the decision on the merits, which we approve, makes an end of the controversy, it becomes unnecessary for us to consider the interesting question of law which the appellant poses as to whether a sale of a partnership interest by one partner to another comes within the scope of the Sales Act so as to be subject to its statute of frauds provision.

The decree is affirmed; the costs to be divided equally.