# Milk Marketing Board of Commonwealth v. United Dairy Farmers Cooperative Association et al., Appellants.

Argued September 29, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

*Paul A. Simmons,* with him *Hormell, Tempest, Simmons, Bigi & Melenyzer,* for appellant.

*Eugene B. Strassburger, III,* Assistant City Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for intervening appellants.

*Stanley Weinberg,* with him *Peter D. Jacobson,* for additional intervening appellants.

*Charles M. Guthrie,* Assistant Attorney General, with him *Thomas J. Oravetz* and *Theodore A. Adler,* Deputy Attorneys General, *Walter J. Sullivan,* Assistant Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

*Willis F. Daniels,* with him *Daniels and Swope,* for intervening appellees.

OPINION PER CURIAM, January 19, 1973:

Preliminary injunction decree granted by Commonwealth Court affirmed by an evenly divided Court.

Mr. Justice POMEROY took no part in the consideration or decision of this case.

---

OPINION IN SUPPORT OF AFFIRMANCE BY MR. CHIEF JUSTICE JONES:

This appeal presents yet another challenge to the minimum retail pricing provisions of the Milk Marketing Law.[1] The appellants[2] seek to reverse a preliminary injunction issued by the Commonwealth Court which restrains the United Dairy Farmers Cooperative Association (hereinafter UDF) from selling milk in their stores at a price below the minimum established by the Board. I would affirm the decree of the Commonwealth Court.

The controversy involved in this case actually goes back to 1967 when, in an ingenious scheme to avoid the minimum price provisions of the Milk Control Act,[3] C & D Budget Stores, Inc. (popularly known as Cat &

---

[1] Act of July 31, 1968, No. 294, 31 P.S. §§700j-101 et seq. (Supp. 1972). The Milk Marketing Act of 1968 replaced the Milk Control Act of April 28, 1937, P. L. 417. The 1968 Act did not alter the substantive provisions of the law applicable to this appeal; however, it did change the name of the administrative agency responsible for the administration of the Act from Milk Control Commission to Milk Marketing Board. Act No. 294, §3, 31 P.S. §700j-201 (Supp. 1972). Hereafter, for the sake of clarity, the Milk Marketing Board and its predecessor will simply be referred to as the Board.

[2] In addition to the United Dairy Farmers Cooperative Association, several others were permitted to intervene on behalf of the defendants and are intervening appellants in this action, including the City of Pittsburgh and Pete Flaherty and the Welfare Rights Organization of Allegheny County.

[3] Act of April 28, 1937, P. L. 417, art. VIII, §§802, 807 (as amended). These provisions were re-enacted in substantially the same form in the 1968 Milk Marketing Act, Act of July 31, 1968, No. 294, §§41, 43, 31 P.S. §§700j-802, 807 (Supp. 1972).

Dog Stores) began selling Class I milk suitable for human consumption at prices substantially below the minimum allowed by the Board, under the artifice that they were selling pet food. Not only did C & D Budget Stores purchase all their milk from UDF, but the two organizations shared some common officers. In September of 1967 the Board obtained a preliminary injunction restraining C & D's continued sale of "pet food" on the ground that their operation was in fact an attempt to circumvent the minimum retail price. In November of 1967 UDF began its own direct sale of milk at retail through the outlets that had previously been used by C & D Budget Stores.

From the beginning, UDF conducted its milk sales in a manner which was in violation of the minimum price provisions of the Milk Marketing Law. Although the prices listed on all milk products displayed in UDF stores conformed with the then current permissible minimum prices established by the Board, prominent signs were posted announcing that "profit dividends" would be paid on all milk purchases. All the customer had to do to receive his "dividend," more properly called a refund, was to present his accumulated cash register receipts at any UDF store between the 10th and 15th of the next month. A refund ranging from $6\frac{1}{2}\%$ to 15% of the total milk purchase price was then paid to the customer. Any milk purchaser was eligible to receive the refund, which was paid only on milk purchases and not on purchases of bread, eggs, or other items available at UDF stores.

Prior to the expiration of UDF's milk dealer's license on April 30, 1968, UDF applied for a renewal as provided by law. However, instead of renewing the license, the Board issued a citation on UDF to show cause why the license should not be revoked in light of UDF's continuing practice of selling milk below the minimum price allowed. Two days later UDF institut-

ed an action in the Federal District Court for the Western District of Pennsylvania (later transferred to the Middle District) seeking to have the Milk Marketing Law declared unconstitutional and seeking to enjoin the revocation of UDF's license. During the pendency of the Federal litigation UDF continued to operate its chain of retail dairy stores throughout the Pittsburgh area under a temporary license.

On April 13, 1971, a three-judge Federal panel issued a per curiam opinion which not only upheld the constitutionality of the Milk Marketing Law but also found that UDF's practice of giving cash refunds on milk purchases was an attempt to circumvent the provisions of the law.[4] On June 2, 1971, the Board initiated the present action by filing a complaint in equity in the Commonwealth Court seeking to enjoin UDF from paying any further "profit dividends" in violation of the law. By stipulation of counsel the Commonwealth Court proceeding was stayed pending the appeal of the District Court decision to the United States Supreme Court, which affirmed the decision on November 9, 1971.[5] Following an additional continuance necessitated by a change in the personnel of the Board, the present equity action was re-commenced in earnest with the filing of an amended complaint by the Board on May 24, 1972. Hearings on the request for a preliminary injunction were held before Judge BLATT and on June 9, 1972, the court issued a memorandum decree and opinion denying the Board's request for a preliminary injunction. Following a petition for reconsideration, a further hearing was held and on June 19, 1972, Judge BLATT issued a decree granting the preliminary injunction which is the subject of this appeal.

---

[4] *United Dairy Farmers Cooperative Association v. Milk Control Commission of Pa.*, 335 F. Supp. 1008 (M.D. Pa. 1971).

[5] 404 U.S. 930 (1971); *rehearing denied* December 20, 1971, 404 U.S. 1006 (1971).

As we have stated many times before, most recently in *Zebra v. Pittsburgh School District,* 449 Pa. 432, 436-37, 296 A. 2d 748, 750 (1972) (citing cases), the scope of appellate review of preliminary injunctions is limited to determining if there were any apparently reasonable grounds for the action of the court below. A thorough review of the record compiled at the hearings which preceded this preliminary injunction decree reveals the existence of reasonable grounds for the action of the Commonwealth Court. There is no evidence of abuse of discretion or palpable error of law in the issuance of this injunction. Indeed, considering the uncontradicted testimony presented at the hearings, the provisions of the Milk Marketing Law, and the prior decisions of this Court, it would have been error for the court below to have refused to grant the injunction.

The appellants contend the preliminary injunction was improvidently issued because (1) the Board failed to show a clear right of relief; (2) granting the injunction does more harm than good; and (3) the Board lacked clean hands and is therefore not entitled to equitable relief.

The answer to the appellants' first contention, that the Board failed to show a clear right to relief, is found in the testimony taken at the hearings before the Commonwealth Court and the language of the Milk Marketing Law. The Act directs the Board to establish minimum wholesale and retail prices to be charged for all milk sold in the Commonwealth.[6] The Law also provides that after the Board has fixed a minimum price it is unlawful for anyone to buy or sell milk below the minimum. In order to insure that the minimum pricing provisions are not circumvented by artful

_____
[6] Act of July 31, 1968, No. 294, §41, 31 P.S. §700j-802 (Supp. 1972).

merchandising maneuvers, the Law specifically provides: "No method or device shall be lawful whereby milk is . . . sold . . . at a price less than the minimum price applicable to the particular transaction, whether by discount, premium, rebate, free service, trading stamps, advertising allowance or extension of credit. . . ."[7]

The Act provides several enforcement mechanisms which may be employed by the Board to punish and restrain violations of the Act. Specifically, the Board is authorized to seek "relief by injunction . . . to enforce compliance with or restrain violations of any provisions of [the Milk Marketing] Act or any rule, regulation or order of the Board made pursuant thereto."[8] In light of the undisputed evidence that UDF stores gave "profit dividends" in violation of the minimum retail prices established by the Board, the Board was authorized by the statute to seek and secure an injunction prohibiting the illegal activity.

The appellants' second contention, that more people are harmed by the injunction than are benefited, ignores the existence of the statute. It is true, as stated in the brief of the intervening appellants, that a preliminary injunction will not be issued unless greater injury will be done by refusing it than by granting it. *Herman v. Dixon*, 393 Pa. 33, 36-37, 141 A. 2d 576, 577 (1958). However, the balancing between harm and benefit that would ordinarily be performed by an equity court in determining whether a preliminary injunction

---

[7] Act of July 31, 1968, No. 294, §43, 31 P.S. §700j-807 (Supp. 1972).

[8] Act of July 31, 1968, No. 294, §51, 31 P.S. §700j-1004 (Supp. 1972). Section 508(a)(50) of the "Appellate Court Jurisdiction Act of 1970," Act of July 31, 1970, P. L. 673, 17 P.S. §211.508(a)(50), transferred jurisdiction of requests for injunctions brought under this section from the Dauphin County Court of Common Pleas to the Commonwealth Court.

should issue has already been done by the Legislature. The situation is quite simple. The legislature has said that no one shall sell milk in Pennsylvania at a price lower than that established by the Milk Marketing Board. The Legislature also declared that, in the event of a violation, the Board is entitled to enjoin the illegal activity. There is nothing left for the court to balance. The appellants are selling milk below the minimum permissible price and the law authorizes the Board to enjoin that illegal activity.

As stated by Judge Woodside in the germinal case of *Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 406, 52 A. 2d 317, 321 (1947),[9] "The argument that a violation of law can be of benefit to the public is without merit. When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public." The intervening appellants argue in their brief, and presented considerable evidence at the hearings, that there are many low-income families with children that depend on the low-price milk available at UDF to supply the needs of their children who will be unable to meet those needs if the injunction is granted. As stated by this Court in *Mead Johnson Co. v. Martin Wholesale Distributors, Inc.,* 408 Pa. 12, 14, 182 A. 2d 741, 742-43 (1962), where the application of the Fair Trade Act was upheld despite allegations that it was inimical to the public interest: "These propositions and arguments are observations which the defendant may address to the Legislature but not to the courts, which are bound by the acts of the General Assembly which has already spoken authoritatively on the subject. . . . [W]e must apply the statute in accordance with its clearly-spelling language."

---

[9] The case was affirmed by this Court, per Maxey, C. J., upon the opinion of Judge Woodside, written when the case was heard in the Dauphin County Court of Common Pleas.

More recently, in *Milk Control Commission v. Lily-Penn Food Stores, Inc.,* 434 Pa. 189, 192, 253 A. 2d 630, 632 (1969), where we reaffirmed the constitutionality of the Milk Marketing Law as a valid exercise of the police power of the Commonwealth, we stated: "The General Assembly has declared the public policy of the Commonwealth, and it is not within the province of this Court to override that legislatively declared policy." We will not do indirectly what we have refused to do directly. The Milk Marketing Law provides that injunctions may be obtained to halt violations of the Act; therefore, injunctions may properly be issued when there is adequate proof of a violation.

The appellants' third contention, that the Board is not entitled to the injunction granted because it lacks clean hands, is without merit. The charge stems from the Board's delay in acting on a petition for reclassification which UDF filed with the Board on February 19, 1972, and which had not been acted on by the Board in June, when the hearings were held and the injunction at issue was granted. Initially, there is absolutely no evidence that the delay was a result of bad faith or malice on the part of the Board. Secondly, even assuming the validity of the appellants' petition for reclassification as a limited service dairy entitled to operate under separate minimum retail prices, and assuming further that the Board intentionally delayed consideration of the UDF petition for reclassification, UDF's remedy was not to violate the law by selling milk below the minimum price. As the Commonwealth Court stated in *G. S. F. Corp. v. Milk Marketing Board,* 4 Pa. Commonwealth Ct. 230, 236, 284 A. 2d 924, 927 (1971), "regulatory agencies in this Commonwealth cannot act in an unreasonable manner in holding mandated hearings for the establishment of its orders, rules and regulations." However, one allegedly aggrieved by the action or inaction of a regulatory agency is not free to

violate the law with impunity. The remedy is to be found in appeal to the proper court and not in unilateral illegal activity.

The appellants have also requested this Court to invoke its extraordinary jurisdiction in this case and to appoint a Commissioner to investigate UDF's charges that the Board has delayed action on UDF's petition for reclassification unreasonably and has severely limited UDF's access to Board records necessary to establish the need for a second classification of "limited service" milk dealers. Although a speedy resolution of this long-standing controversy is desirable, there is nothing in the instant case which merits the exercise of extraordinary jurisdiction.

At the time of this appeal the Board had already begun hearings on UDF's request for reclassification. When the Board has acted on that request, if UDF is dissatisfied with the outcome they will be entitled to appeal the decision to the Commonwealth Court as provided in Section 46 of the Milk Marketing Law.[10] The issues which UDF seeks to have decided by this Court in an exercise of extraordinary jurisdiction can be more appropriately determined on appeal from a final order of the Board if necessary.

I would affirm the preliminary injunction decree granted by the Commonwealth Court.

Mr. Justice EAGEN and Mr. Justice ROBERTS join in this opinion.

OPINION IN OPPOSITION TO AFFIRMANCE BY MR. JUSTICE O'BRIEN:

In its original opinion and order, dated June 9, 1972, the Commonwealth Court denied the appellee's

---

[10] Act of July 31, 1968, No. 294, §46, 31 P.S. §700j-901 (Supp. 1972). *See* note 8, *supra*, for the effect of the Appellate Court Jurisdiction Act on this Section.

motion for a preliminary injunction, saying, *inter alia*:

"The Board's evidence, however, is not sufficiently persuasive, and the Court is not wholly convinced, either that the law is presently being clearly violated by the UDF or that irreparable injury will be done, if the UDF's activities are not at once enjoined. In fact, the Court believes it possible that greater injury might be done to a greater number of people if a preliminary injunction were improvidently granted now, only to be lifted, perhaps, when the question of its being made permanent is considered.

"The activity complained of here was admittedly begun by UDF in 1967, and it continued thereafter during the pendency of federal litigation and awaiting further action by the plaintiff Board. During all of the period concerned, almost five years, the chaotic conditions which the Board and the Dairies predict for the future if this preliminary injunction is not granted now, have not occurred. The necessity for the extraordinary remedy of a preliminary injunction, therefore, has not been thoroughly demonstrated. Moreover, the record indicates that increasing thousands of milk purchasers in the area concerned have come to depend upon UDF stores for their milk supply, and they would not only be seriously inconvenienced but would also suffer a substantial monetary loss, if the operations of the UDF were now to be suddenly enjoined."

I cannot see how there was any change in the situation by June 19, 1972, so as to justify the granting of the preliminary injunction which had been previously refused. In fact, in its second opinion, there is nothing to negate the Commonwealth Court's earlier opinion that no clear right to relief had been shown. Instead, the court's second opinion is devoted to the issue of the effects of widespread misinterpretations of its first opinion. However, if the June 9 order was being misinterpreted, the ambiguities should have been corrected

in that opinion without the granting of a preliminary injunction. In my opinion, the issue of whether the UDF's practices are in violation of the statute is a complex issue, requiring a full hearing on the merits. Consequently, I believe, as the Commonwealth Court originally believed, "that greater injury might be done to a greater number of people if a preliminary injunction were improvidently granted now, only to be lifted, perhaps, when the question of its being made permanent is considered."

I would dissolve the preliminary injunction and remand the case for a full hearing on the merits, to be held without delay.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.