## Billinger Estate.

Argued January 8, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Jay N. Abramowitch,* with him *Miller and Murray,* for appellant.

*C. Wilson Austin,* with him *Austin, Speicher, Boland, Connor & Giorgi,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1973:

Vinnie I. Billinger died testate on December 15, 1969 leaving a holographic will and a codicil which were duly probated. Letters testamentary were issued to decedent's son, Robert Billinger.

Ida R. Mengel, appellee, filed objections to the final account claiming that the estate owed her $10,000. Appellee's claim was based on an alleged oral contract whereby she agreed to perform domestic services in consideration of decedent's promise to bequeath $10,000 to her. Judge MUTH, as the auditing judge, after hearing, filed an adjudication dismissing the claim. Appellee interposed exceptions to the adjudication and Judge MUTH, sitting as the court en banc, amended his prior adjudication and allowed the claim. The executor appealed.

Review of the whole record satisfies us that the uncontradicted evidence establishes the existence of a valid oral contract. Theodore Mengel, appellee's son, testified that he was present in decedent's apartment in 1962 when his parents and the decedent discussed the terms of the contract and reached an agreement. He further

testified that his mother, appellee, regularly performed domestic services for decedent for at least eight or nine years prior to decedent's death. He testified that following the 1962 agreement he personally transported appellee to and from decedent's apartment "hundreds of times." Two of decedent's neighbors—one of whom lived in the same building as decedent—also testified and corroborated the fact that for at least eight years appellee performed household services for decedent "almost every day."

Theodore Mengel's uncontradicted, corroborated, and unimpeached testimony was suffiicent to satisfy appellee's burden of proof. See *Petro v. Secary Estate*, 403 Pa. 540, 543, 170 A. 2d 325, 327 (1961) ; *Pavlinko Estate*, 399 Pa. 536, 544, 160 A. 2d 554, 559 (1960) (child of claimant competent to testify). Judge MUTH, sitting as the court en banc, recognized the weight which must be afforded this testimony when he concluded: "An examination of our Adjudication and a review of the testimony discloses that the auditing judge apparently allotted an inordinate influence to the fact that the testimony with reference to the nature of the agreement rested entirely upon the son of the claimant. As pointed out in our Adjudication, this testimony was relevant and admissible. We also concluded that the testimony concerning the nature and the terms of the contract was direct, precise and specific. Our dismissal of the claim of Ida R. Mengel was based upon the assumption that proof of the claim had not been established by evidence which is clear, direct, precise and convincing. In our Adjudication, it seems that little weight was given to the mute evidence of the continued employment and services of the claimant to the decedent from the time the oral agreement was entered into in April of 1962, until the time of the death of the Testatrix in December of 1969. *The testimony of Theodore R. Mengel is not disputed and a review of the testimony thereof convinces*

*us that our Adjudication was in error in rejecting the claim of Ida R. Mengel, and that our error apparently was caused in large part by our suspicion of the testimony of the son of the claimant, which suspicion we now conclude was unfounded."* (Emphasis added.)

Appellant urges that when an auditing judge is reversed by the court en banc, an appellate court should give great weight to the findings of the auditing judge. While, in such circumstances, the findings of the auditing judge should be afforded "great weight", *Lacey v. Rutter,* 358 Pa. 502, 505, 57 A. 2d 679, 680 (1948), it is also clear that "a court en banc may, indeed should, reverse or reject unsupported or illogical findings of a chancellor, putting upon the record at the same time a statement of its reasons for so doing." Id. at 506, 57 A. 2d at 680-81. "Where reasons are so given, it becomes the duty of an appellate court to fully and carefully examine them, together with the entire record, and determine whether the action of the court in [sic] banc is justified, keeping in mind the weight to which the original findings are entitled and also the reasons given for their overthrow." Id.

An examination of the entire record—especially the adjudication of the court en banc—reveals that Judge MUTH was justified in rejecting his conclusions as the auditing judge. Unlike *Fahringer v. Strine Estate,* 420 Pa. 48, 60, 216 A. 2d 82, 89 (1966), where there was no promise or offer "definite and certain in nature", here, uncontradicted evidence established the contract, the terms of which were "proven with clarity and conviction." Id. at 52, 216 A. 2d at 85. Moreover, valid consideration legally sufficient to support the oral contract was supplied by appellant's regular performance of domestic services for decedent for several years without regular compensation after the contract and prior to decedent's death.

The legal and factual requirements for establishing a valid oral contract to bequeath a specific sum of money in exchange for services rendered to the decedent during her lifetime are set forth in *Fahringer v. Strine Estate,* supra at 52-54, 216 A. 2d at 85-86. See also *Petro v. Secary Estate,* supra; 1 Hunter, Penna. Orphans' Court Commonplace Book 402-05 (1961). The record here fully satisfies those requirements.

Decree affirmed. Each party to pay own costs.