366 A.2d 936

**HARBOR MARINE COMPANY, Appellant,**

v.

**James NOLAN.**

Superior Court of Pennsylvania.

Argued April 12, 1976.

Decided Dec. 15, 1976.

John W. English, Jr., John W. English, Sr., Jonathan G. Alberstadt, Erie, for appellant.

John M. Wolford, MacDonald, Illig, Jones & Britton, William R. Brown, Erie, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Plaintiff-appellant Harbor Marine Company, Inc., brought an action in ejectment at law against defendant-appellee James Nolan. The trial court found in favor of appellant and issued an Order in Ejectment against appellee. The court en banc [1] sustained the exceptions of the appellee and dismissed the appellant's action. From that order, this appeal arises. We affirm.

A clear appreciation of the issues presented by this case will be facilitated by an examination of the development of the dock area bordering the City of Erie, Pennsylvania.[2] The Pennsylvania Legislature, by the Act of March 29, 1805, Chapter 2588 (1805 Statutes at Large of Pennsylvania 1005 (1915) ), created the Borough of Erie. The shore of Lake Erie was to serve as the borough's northern boundary. The same statute gave the borough power to lay out lots in the Bay of Presque Isle, to be used for wharves, and also gave the borough power to extend into the bay the streets which had previously terminated at the shore line.

1. The trial court judge was not a member of the court en banc, his term having expired prior to the argument.

2. Appellant contends that the court en banc erred in considering the history of Erie's dock area because the facts involved were not presented to the trial court. However, the history itself was not an issue in the case nor was it a legal theory. It was merely an explanation designed to aid in gaining an understanding of the issues. We think the court en banc did not err in seeking to obtain a stronger grasp of the case. Furthermore, the history consisted primarily of ancient statutes and ordinances of which a court may ordinarily take judicial notice. *Unangst's Appeal,* 333 Pa. 489, 5 A.2d 201 (1939); Act of April 8, 1941, P.L. 16, § 1 (28 P.S. § 301), *as amended.*

In 1834, the Act of April 15, 1834, No. 234 (1833–34 Laws of Pennsylvania 520 (1834) ), extended the northern boundary of the borough 1300 feet into the bay. Pursuant to that act, the borough constructed a public pier at the new northern boundary.

In 1837, the Burgess and Town Council of Erie entered into agreements with the owners of lots in the Bay of Presque Isle, giving those owners power to erect wharves or platforms just south of the public pier. The lots south of the public pier were to correspond in location and dimension to the lots north of the shore line. These lots, south of the public pier, became known as Outshore Water Lots.

Completing the scenario for this case, the City of Erie, in 1860, enacted an ordinance extending a series of streets, one of which was Peach Street, northwardly into the Bay of Presque Isle and extending as far as the southern edge of the public pier.

More than a century later, Erie Fish Company was the record owner of Outshore Water Lot Number 80 on the east side of Peach Street and J. W. Nolan & Sons, Inc., was the record owner of Outshore Water Lot Number 81 on the opposite (west) side of Peach Street. In 1965, appellee entered into articles of agreement to purchase Outshore Water Lot Number 80 from Erie Fish Company. At the same time, a petition was filed with the City of Erie requesting that the section of Peach Street between lots 80 and 81 be vacated and conveyed to appellee. The petition averred that appellee was the equitable owner of the two abutting lots. The petition was signed by appellee as agent for J. W. Nolan & Sons, Inc., and John Wilson, secretary of Erie Fish Company, testified that he signed such a petition as agent for Erie Fish Company.

An ordinance was enacted purportedly accomplishing the above objective, the purpose of which was announced in the following language:

"Vacating and discontinuing Peach Street between Out-shore Water Lots 80 and 81 and bounded by the West Public Dock Drive on the north and the West Canal Basin on the south, for an approximate distance of 200 feet and reverting said land vacated to the abutting property owners, for the sum of $2,500.00 and other valuable considerations."

The pertinent sections of the above-described ordinance are:

"Section 1. That the City of Erie hereby vacates and discontinues as a public thoroughfare, all that certain parcel of land situate on Peach Street lying between Out-Shore Water Lots 80 and 81 and bounded by the West Public Dock Drive on the north and the West Canal Basin on the south, for an approximate distance of 200 feet and reverting said land vacated to the abutting property owners.

Section 2. That this ordinance shall become effective upon expiration of thirty (30) days from the passage thereof in the manner provided by law, unless an appeal to the Court of Common Pleas of Erie County shall have been taken within thirty (30) days by any persons interested, as provided by law.

Section 3. That the said abutting property owner shall pay to the City of Erie, in consideration thereof and as liquidation of benefits received by them as abutting property owners, the sum of $2,500.00 payable $1,500.00 in cash upon delivery of a deed from the City of Erie and the remaining $1,000.00 in two (2) years without interest prior to maturity."

Pursuant to the ordinance, appellee paid to the city the entire $2,500.00 and the city gave appellee a special warranty deed to the property, which warranty deed was duly recorded on March 24, 1966.

Subsequently, appellee defaulted on his agreement to purchase Lot 80 from the Erie Fish Company. Appellant would have us believe that appellee never intended to go through with the purchase from the beginning. However, appellee's uncontradicted testimony establishes that his own financial difficulty was the reason for the default. At some time in 1966, a payment was due from appellee to the Erie Fish Company, but appellee did not have the liquid assets available to make the payment. He went to the office of Erie Fish Company's representative and asked for more time. According to appellee, the representative rudely denied him the needed time. An angry exchange occurred, and appellee then indicated his intention to default on the agreement, forfeiting the payments he had already made.

Subsequently, Erie Fish Company contracted to sell Outshore Water Lot Number 80 to John Spitzer, an incorporator of appellant. The contract was assigned to appellant and on March 11, 1970, Erie Fish Company conveyed the deed to the lot to appellant. The deed contained, *inter alia,* the following language:

"Seller also conveys hereby all of its right, title and interest, if any, in and to the land between Out Shore Water Lot No. 80 and Out Shore Water Lot 81, being what is now or formerly was the extension of Peach Street."

According to appellee's testimony, he began work on the vacated portion of Peach Street in late 1966. Because much of the work was performed under water, visible improvements were not being made until 1970. By the time the summons in ejectment was filed on May 6, 1971, a building had been partially completed. At any rate, Mr. Spitzer admittedly knew of the work being performed by appellee by 1967, and he and appellee often saw each other on the waterfront subsequent to that time.

The property at issue in this case, then, is the eastern one-half of what was formerly the extension of Peach Street, between Outshore Water Lots Numbers 80 and 81, in the Bay of Presque Isle. Appellee claims title to the property through the deed received from the City of Erie and duly recorded. Appellant's claim to the property is somewhat more complicated. The ordinance that vacated Peach Street authorized a conveyance to the "abutting property owners." Because appellee had only equitable title to the abutting property on the east, and legal title resided and remained in the Erie Fish Company, appellant contends that the interest in the eastern one-half of the parcel could not be conveyed to appellee, but instead automatically reverted to Erie Fish Company, and from Erie Fish Company to appellant.

Pursuant to Pa.R.C.P. 1058, the case was tried without a jury. The trial court, in issuing the order in eject-ment, recognized that the penultimate issue in the case seemed to revolve around the effect of the special war-ranty deed from the City of Erie to appellee. The court held the deed invalid for two reasons: (1) the acquisi-tion of the deed was based on a misrepresentation of fact made by appellee to the City of Erie in the petition to va-cate, that misrepresentation being that appellee was the owner of Outshore Water Lot Number 80; (2) a munici-pality has no power to convey vacated streets to anyone other than abutting property owners. Because appellee was not the abutting property owner, the City of Erie had no power to convey the property to him.

The court en banc reversed the trial court and dis-missed the complaint in ejectment. In doing so, the court en banc found no support for the trial court's find-ing of misrepresentation. In addition, the court en banc found that the parcel in dispute was not and had never been a "street," and, therefore, the general rule mandat-ing conveyance to abutting landowners did not apply. Finally, contrary to the trial court's decision, the court

en banc found the appellant's cause of action to be barred by laches.

The plaintiff's burden in an action in ejectment is clear. He must establish a right to immediate exclusive possession, and he must do so on the strength of his own title, not on the weakness of the defendant's. *Balkiewicz v. Asenabage,* 406 Pa. 501, 178 A.2d 591 (1962); *Henry v. Grove,* 356 Pa. 541, 52 A.2d 451 (1947).

In this case, appellant's claim to the property is based on the ordinance vacating the public street to abutting property owners and on its predecessor's status as an abutting property owner. This ordinance was recorded in the Recorder of Deeds' Office on May 14, 1971.

Appellant argues that the deed to appellee is invalid because the city did not have power to convey the vacated portion of Peach Street to anyone other than the abutting property owners. Because appellee was not an abutting property owner at the time of the conveyance, appellant contends that the deed is null and void.

The law in Pennsylvania is well settled: "Upon a conveyance of land bounded by a street, unless otherwise provided, the grantee takes to the middle of the street, if the grantor owns thus far, subject to the public easement; and when the street is vacated, this portion of it reverts to the grantee. . . . (citations omitted)." *Barnes v. Philadelphia, N. & N. Y. R. R.,* 27 Pa.Super. 84, 86 (1905). This rule developed as a presumption of the intent of the parties. *Bliem v. Daubenspreck,* 169 Pa. 282, 32 A. 337 (1895); *Paul v. Carver,* 26 Pa. 223 (1856).

The court en banc held that the above rule does not apply in this case because (1) the property in question was never a "street" and (2) the plaintiff was guilty of laches.[3] We agree with the latter finding and,

3. Equitable defenses are available in an action in ejectment if the defendant is able to present a case such that, were he the plaintiff, he would be entitled to specific performance. *Kait v. Rose,*

therefore, need not discuss the former. In this case, the petition to vacate, signed by appellant's predecessor in title, was filed with the City of Erie in 1965. The deed to appellee was recorded in 1966. From 1967 to 1971, appellant's predecessor in title, Mr. Spitzer, was aware that appellee claimed title to the property and that appellee was improving the property.

Furthermore, it is clear that Mr. Spitzer was aware of a possible problem with the title to Peach Street. Mr. Spitzer testified that when he bought the property in 1967, he had a discussion with Erie Fish Company's attorney about the ownership of Peach Street. The attorney told Spitzer that Erie Fish Company had considered filing an action against appellee to regain the eastern portion of Peach Street.

Another incident, described in the testimony of Mr. Spitzer, is relevant to this point. Mr. Spitzer met appellee for the first time in 1967. This meeting took place "somewhere on the dock." [53a] At that time, Mr. Spitzer was aware that appellee's building was being constructed on the eastern half of what was formerly Peach Street, and Mr. Spitzer informed appellee that he believed that there was a question as to the ownership of that property. Appellee's reply indicated that he thought that Spitzer's claims to the property were groundless.

Appellee testified that on a later occasion, he inquired of the status of Mr. Spitzer's alleged claim and Mr. Spitzer replied that his attorney had checked appellee's deed to the property and decided it was valid. Nothing further was said of the title to the property until 1971, when appellee was informed that an action was being brought to eject him from the property. We are thus faced with a case where one party sits on a suspected right, induces a false sense of security in the second par-

351 Pa. 560, 41 A.2d 750 (1945); *Martinek v. Kira,* 344 Pa. 676, 25 A.2d 721 (1942).

ty, and then, after the second party has changed his position, acts to enforce that right.

"[I]f the one in possession of land acts from an honest conviction that his legal position is sound, and this belief is based in large part on his adversary's conduct, which leads him to the opinion his title is well founded, and on the faith of which he expends large sums of money, the duty of the rival claimant to assert his title promptly is imperative. . . . [A]ppellees cannot sleep on their rights . . . then, after appellant has moved to his damage, assert their pretensions; they will be held in equity strictly to the principles which govern the law of estoppel. Under the judgment of the court below this property must now be destroyed or this appellant must pay a large sum of money to continue its work. . . . What appellees hope to get is a mere naked right as against the countervailing equities of this appellant. That right sinks into the shadows, and ought not to be discernible by a court of equity." *Gailey v. Wilkinsburg Real Estate Trust Co.*, 283 Pa. 381, 391–92, 129 A. 445, 449 (1925).

█ The trial court held that in order for the theory of laches to apply, the lapse in time must equal that required to establish adverse possession. This was error. Laches does not depend on the expiration of a definite amount of time, but whether, "under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." *Siegel v. Engstrom*, 427 Pa. 381, 386, 235 A.2d 365, 368 (1967), *quoting Wilson v. King of Prussia Enterprises, Inc.*, 422 Pa. 128, 133, 221 A.2d 123, 126 (1966).

█ In this case, the predecessor from whom appellant derives his alleged title signed a petition to have the property conveyed to appellee. Another predecessor told appellee that appellee's title was sound, and delayed instituting an action while he observed appellee making

costly improvements. Under these circumstances, equity will not permit an order in ejectment to issue.

Appellant also argues that the deed to appellee is invalid because appellee obtained the deed by misrepresenting that he was the owner of Outshore Water Lot Number 80, and that the misrepresentation renders the deed null and void. It is, of course, a well established maxim of equity that one who seeks equitable relief must enter the courtroom with "clean hands." *See e. g., Milk Marketing Board of Commonwealth v. United Dairy Farmers Cooperative Assoc.*, 450 Pa. 497, 299 A.2d 191 (1973); *Spring City Foundry Co. v. Carey*, 434 Pa. 193, 252 A.2d 666 (1969).

The trial court judge found as a fact that appellee was guilty of the alleged misrepresentation, and that finding is entitled to great weight. The court en banc, however, found no support in the record for the trial court's finding and, therefore, reversed it. *See Vajentic Estate*, 453 Pa. 1, 306 A.2d 300 (1973); *Lacey v. Rutter*, 358 Pa. 502, 57 A.2d 679 (1948). We agree with the court en banc.

The initial overture made by appellee to the City of Erie consisted of a letter dated February 19, 1965, from appellee's attorney to the City of Erie Port Commission. In that letter, appellee is represented as being in the process of purchasing Outshore Water Lot Number 80. This was entirely true. The agreement of purchase was signed on February 12, 1965, and appellee made payments pursuant to the agreement. Not until 1967 did appellee default on the agreement, and, as indicated earlier, there is no evidence of bad faith on appellee's part.

The petition filed with the City of Erie clearly states that James Nolan "is the equitable owner of said abutting property known as Water Lots 80 and 81." This, too, was an accurate statement of fact. There is no evidence to support a finding that appellee misrepresented

his status to ~~the City of Erie, and, therefore~~, there is no reason to deny appellee the defense of laches.

The order of the court en banc is affirmed.